[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15432
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-24234-JAL


WANDA GILBERT,

Plaintiff-Appellant,

versus

CITY OF MIAMI GARDENS,
a municipality,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 19, 2015)

Before MARCUS, WILLIAM PRYOR, and MARTIN, Circuit Judges.

PER CURIAM:

Wanda Gilbert appeals the district court's grant of the City of Miami

Gardens' motion for judgment as a matter of law following a jury trial in this Fair Labor Standards Act case.  Gilbert argues that based on the evidence she offered at trial, a reasonable jury could have concluded that the City willfully violated the FLSA's overtime pay requirement.  In particular, she argues that the City had reason to believe the hours she reported on her timesheet were inaccurate but it failed to pay her overtime anyway.  After careful consideration, we agree and reverse.

I.

"We review a judgment as a matter of law de novo and apply the same standard as the district court."  Connelly v. Metro. Atlanta Rapid Transit Auth., 764 F.3d 1358, 1363 (11th Cir. 2014).  A district court may grant judgment as a matter of law if no "reasonable jury would . . . have a legally sufficient evidentiary basis to find for the [nonmoving] party."  Fed. R. Civ. P. 50(a)(1).  "The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law."  Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1308 (11th Cir. 1998) (quotation omitted).

We recount the evidence in the light most favorable to Gilbert.  Gilbert worked as a crime intelligence analyst for the City from November 1, 2007, to October 22, 2010.  She was responsible for preparing her own timesheets, including for recording her overtime.  Until December 2009, Gilbert regularly

2

recorded overtime.  However, on January 11, 2010, one of her supervisors—then-Captain Frank Trujillo—informed her that the department could no longer pay overtime due to budgetary concerns, and that if she needed to or was ever asked to work overtime, she must seek preapproval from him.  After January 11, Gilbert says that she often worked overtime, but more or less stopped recording that she was working more than eight hours a day.

During most of the time Gilbert worked for the City, Thaddeus Knight was its only other crime intelligence analyst.  Knight left his job in March 2010.  Gilbert testified that after Knight left, she inherited his job responsibilities on top of her own, and was required to work longer hours in order to get both jobs done.  She also testified that Knight was not replaced until late August 2010, and his replacement was not able to immediately take over his duties without training.  At a meeting on August 30, 2010, Gilbert testified that she told her supervisors that she had been coming into work early, leaving late, and working through lunch.  She testified that they did not pay or offer to pay her for that time.

Gilbert left her job on October 22, 2010.  She filed this FLSA complaint on November 29, 2012.  Following a three-day jury trial, the district court granted the City's motion for judgment as a matter of law because it said no reasonable jury could find that any violation was willful.

3

II.

The FLSA requires employers to pay overtime.  29 U.S.C. § 207(a)(1).

However, "every such action shall be forever barred unless commenced within two

years after the cause of action accrued, except that a cause of action arising out of a

willful violation may be commenced within three years after the cause of action

accrued."  Id. § 255(a) (emphasis added).  Gilbert filed her cause of action on

November 29, 2012, more than two years after her final day of work.  Thus her

action is barred by the two-year statute of limitations unless she can show that any

violation of the FLSA by the City was willful.

"To establish that the violation of the [FLSA] was willful in order to extend

the limitations period, the employee must prove by a preponderance of the

evidence that [her] employer either knew that its conduct was prohibited by the

statute or showed reckless disregard about whether it was."  Alvarez Perez v.

Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1162–63 (11th Cir. 2008).

Reckless disregard is the "failure to make adequate inquiry into whether conduct is

in compliance with the Act."  5 C.F.R. § 551.104.  Thus, the relevant question in

this case is whether, based on the evidence at trial, a reasonable jury could decide

that the City failed to make adequate inquiry into whether its payment of Gilbert's

wages complied with the FLSA.

We say yes.  Based on the evidence at trial, the jury could have reasonably

concluded that the City showed reckless disregard for whether Gilbert was paid for overtime. Before the January 2010 meeting in which Captain Trujillo told Gilbert the City could not pay overtime, Gilbert regularly recorded overtime on her timesheets. After the meeting, however, Gilbert all but stopped recording overtime, and instead recorded exactly eight hours of work on most days. She did this despite the fact that her job duties ballooned following the departure of her co-worker, Knight, in March 2010. A reasonable jury could have inferred from this inconsistency that the City failed to adequately inquire whether Gilbert's recorded time was accurate. In fact, Knight himself testified that it would have been impossible to complete both his and Gilbert's job duties within a forty-hour work week, and a jury could have credited that testimony.

Beyond that, some of Gilbert's co-workers testified that it was fairly obvious to the office that Gilbert was working long hours. Knight testified that even before he left, he would see Gilbert working through lunch. Another employee, Luwani James, testified that she regularly saw Gilbert work from 6:00 am to at least 4:00 pm and assumed those were her standard hours. Still another employee, Jeffrey Mason, testified that he saw Gilbert working long hours, and he said that "it was fairly well known that [Gilbert] would come in early and work through lunch." Based on this testimony, a jury could have surmised that Gilbert's supervisors would have known that she was working long hours even after Captain Trujillo's

5

January 2010 admonition had they been reasonably diligent in ensuring their compliance with the FLSA's requirements.

Finally, Gilbert herself testified that although Captain Trujillo ostensibly allowed preapproval for overtime, he was also clear that she should submit "no overtime" for budgetary reasons. A jury could have believed that his latter rule essentially trumped the former rule. In short, although the jury heard some evidence that weighed against finding willfulness, it also heard evidence in favor, and it was entitled to decide for itself whether the City willfully violated the FLSA.

## III.

In granting judgment as a matter of law, the district court primarily noted that Gilbert filled out her own timesheets, that she rarely documented overtime work, and that when she did mark down more than eight hours of work in a day, the City paid her for it. Of course, in general, the district court is correct that "[a]n employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur." Gaylord v. Miami-Dade Cnty., 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999). But at the same time, "where the employer encourages artificially low reporting, it cannot disclaim knowledge." Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1319 (11th Cir. 2007). For instance, in Allen, several plaintiffs testified that their supervisors "were aware of their work beyond their scheduled hours." Id. at 1320. The

6

employer in turn argued that "even if the supervisors were aware that Plaintiffs were working beyond their scheduled hours, the supervisors did not know that Plaintiffs were not recording their time." Id. at 1321. We rejected that argument, saying that despite the plaintiff's failure to record accurate overtime, "th[ose] arguments should be made to a jury." Id.

In fact, this case is strikingly similar to our sister Circuit's holding in Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011). There, the plaintiff "allege[d] that it was not possible to complete all of his duties in forty hours per week," but that "he did not record any overtime on his timesheets . . . because his supervisors instructed him not to record more than forty hours per week." Id. at 356. The Second Circuit held that in the light most favorable to the plaintiff, there was sufficient evidence that the employer willfully withheld overtime wages. Id. at 366. It emphasized that the employer "was aware that [its employees'] responsibilities would push them very close to, if not over, the forty-hour threshold," but it nonetheless asked the plaintiff not to record overtime. Id. Likewise here, there was evidence that although the City knew Gilbert's job duties were time-consuming, particularly following Knight's departure, Captain Trujillo nonetheless insisted that the City could not pay overtime for budgetary reasons. A jury could decide that this constituted reckless disregard of Gilbert's FLSA rights.

Unlike the district court, we find this case different from our predecessor

7

Court's decision in Brumbelow v. Quality Mills, Inc., 462 F.2d 1324 (5th Cir. 1972).[1]  There, we found no FLSA violation when an employee worked overtime but falsely reported to her employer that she only worked eight hours a day.  Id. at 1325.  But Brumbelow worked at home, so her employer could not see how long she worked.  Id.  And although Brumbelow insinuated that it was impossible to complete her requisite duties in an eight-hour workday, "[t]he company came forward with substantial evidence explaining how the requisite minimum production had been formulated and that it was both achievable and achieved by its [other] homework employees."  Id. at 1326.  By contrast, several of Gilbert's former coworkers testified that it was obvious to the office that she worked overtime.  She also offered evidence that it was impossible for her to complete her work within normal work hours—particularly following Knight's departure.

In short, Gilbert has shown more than a scintilla of evidence suggesting that the City was willful in denying her overtime pay under the FLSA.  A jury could have concluded that the City encouraged Gilbert to record no overtime even when it assigned her job duties that were fated to take longer than eight hours a day, and even though it was obvious to others in the office that she actually worked overtime.  The district court erred in granting the City's motion for judgment as a

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

matter of law.[2]

**REVERSED AND REMANDED.**

---

[2] At points in Gilbert's brief, she makes vague references to allegedly incorrect evidentiary rulings during the trial.  Those references, made without headings, case citations, or substantial argument, are insufficient to preserve any evidentiary arguments on appeal.